IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| STEPHEN A. SPENCER<br><br>               Plaintiff<br>vs.<br><br>WETTERMARK & KEITH, LLC doing business as Wettermark Keith, and JOHN MCELHENY<br><br>               Defendants | Civil Case No. _____<br><br>**JURY DEMANDED**<br><br>MAGISTRATE JUDGE_____<br><br>DISTRICT COURT JUDGE_____ |

**COMPLAINT**

Comes the Plaintiff, by and through counsel, and allege the following:

## I. PARTIES

1. Plaintiff Stephen A. Spencer is a citizen and resident of the State of Tennessee, with his home address at 1272 Old Beech Creek Road, Waynesboro, Tennessee.

2. Defendant Wettermark & Keith, LLC (hereinafter "Defendant Law Firm" or "Wettermark Keith") is an Alabama limited liability company authorized to do business in Tennessee, and doing business as Wettermark Keith, with its home offices located at 3595 Grandview Parkway, Suite 350, Birmingham, Alabama, and may be served through its registered agent for service of process, James H. Wettermark, at 651 E. 4th Street, Suite 100, Chattanooga, Tennessee 37403.

3. Defendant John McElheny is a citizen and resident of the State of Alabama, and may be served at 820 Cobb Street, Homewood, Alabama 35209, and at all times material hereto was an employee, attorney and or agent of the Defendant Law Firm.

1

## II. JURISDICTION AND VENUE

4. The allegations in Paragraph 1-3 are incorporated herein by reference.

5. This district court has jurisdiction over the claims asserted in this complaint pursuant to 28 U.S. Code § 1332(a), as the plaintiffs and defendants are residents of different states and the amounts in controversy exceeds SEVENTY-FIVE THOUSAND AND NO/100 DOLLARS ($75,000.00).

6. Venue is proper pursuant to 28 U.S. Code § 1391(b), as the causes of action occurred in the judicial district for the Middle District of Tennessee.

## III. FACTS

7. The allegations of Paragraphs 1-6 are incorporated herein by reference.

8. Plaintiff was involved in a serious trucking accident in Alabama on June 12, 2017 and sustained serious personal injuries while operating a tractor trailer within the scope of his occupation as a single truck owner operator.

9. At the time of that 2017 accident, Plaintiff had occupational accident disability insurance through Atlantic Specialty Insurance Company doing business as One Beacon American Insurance and/or One Beacon American Insurance [hereinafter "One Beacon Insurance"], being Policy No. 216-000-002 which he acquired in the State of Tennessee.

10. Under the terms of the One Beacon Insurance policy, Plaintiff was to receive disability benefits and medical benefits if injured during Plaintiff's occupation as a truck driver.

11. Plaintiff retained the services of the Defendant Law Firm to assist Plaintiff with Plaintiff's personal injury claim and Plaintiff's disability claim with One Beacon Insurance, and this was done by Plaintiff calling the Defendant Law Firm from Plaintiff's home in Wayne County,

Tennessee, and a representative from the Defendant Law Firm coming to Emeralds Restaurant in Wayne County, Tennessee, and Plaintiff signing papers at that restaurant.

12. The Defendant Law Firm assigned attorney Defendant John McElheny to represent Plaintiff, and Defendant John McElheny was assisted by the Defendant Law Firm's case manager, Jeff Moran.

13. Plaintiff spoke with Defendant McElheny and Mr. Moran multiple times about how important it was to Plaintiff that nothing be done as any part of any personal injury settlement that would interfere with Plaintiff's disability benefits and medical benefits under the One Beacon Insurance policy.

14. In discussions Plaintiff had with Defendant McElheny and Mr. Moran, Plaintiff told them about Plaintiff's conversations with representatives of One Beacon Insurance (and their subsidiaries, attorneys and adjusters), specifically about One Beacon Insurance trying to stop paying benefits once Plaintiff's personal injury claim was settled, and Plaintiff told Defendant McElheny and Mr. Moran that Plaintiff did not want that to happen.

15. Plaintiff also spoke with Defendant McElheny's personal secretary multiple times that Plaintiff was unwilling to give up his medical coverage and disability benefits in exchange for settling the subrogated medical payment.

16. In or about March of 2018 Jeff Moran & Mr. McElheny during a conference call with Plaintiff, Mr. Moran and Defendant McElheny stated that One Beacon attorneys were of the opinion that all insurance coverage should stop after the settlement of the subrogated medical payment, but Mr. McElheny and Jeff Moran stated they were not of that opinion and that One Beacon Insurance could not stop coverage; and at that time, Plaintiff told Defendant McElheny

and Mr. Moran, and at other times later, that Plaintiff would never allow One Beacon Insurance to end his benefits in exchange for the settled subrogated medical claim.

17. At a later date, Defendant McElheny told Plaintiff that Plaintiff could settle One Beacon Insurance's subrogation claim as a result of Plaintiff's personal injury settlement, that this would not affect Plaintiffs disability benefits or medical benefits, and that if Plaintiff signed the release One Beacon Insurance sent to Defendant McElheny, Plaintiff would eliminate any leverage One Beacon Insurance would have concerning Plaintiff's future disability and medical benefits, and that Plaintiff could continue to talk with One Beacon Insurance's people about paying Plaintiff's disability benefits and medical benefits, as those benefits would remain intact.

18. During this time, the Defendant Law Firm had helped Plaintiff secure Plaintiff's Social Security Disability benefits as a result of injuries from the vehicular accident, and at all times Plaintiff was dealing with One Beacon Insurance, Plaintiff was still injured, still in pain and still on pain medication.

19. The Defendant Law Firm, and particularly Defendant McElheny, was aware of the facts stated in Paragraph 14-18 above, and since Plaintiff was only drawing limited Social Security Disability benefits, and would not be going back to work, it was even more important for Plaintiff to keep in place his disability and medical benefits through One Beacon Insurance.

20. In a telephone conversation Plaintiff had with Defendant McElheny in or about August 2018, Defendant McElheny advised Plaintiff (while in Tennessee) that One Beacon Insurance was agreeable to settling One Beacon Insurance's subrogation claim against any personal injury settlement for $8622, and in that conversation, Defendant McElheny again represented to Plaintiff that Plaintiff could continue to receive disability benefits and medical benefits under the One Beacon Insurance policy.

21. In the August 2018 telephone conversation referenced in Paragraph 20 above, Defendant McElheny stated to Plaintiff that Defendant McElheny could send Plaintiff the release from One Beacon Insurance which Defendant McElheny had received, and that Plaintiff should sign that release and return it to him to finalize any subrogation issues with One Beacon Insurance and this would remove any leverage One Beacon Insurance may have concerning further discussions related to Plaintiff's efforts related to future disability and medical benefits.

22. Defendant McElheny sent the One Beacon Insurance release to Plaintiff in Wayne County, Tennessee via email to print out, to sign, and fax back.

23. Relying on the representations of Defendant McElheny as stated above, and relying on Defendant McElheny as Plaintiff's attorney had read the release and recommended that Plaintiff sign it to accomplish Plaintiff's purpose of allowing his future medical and disability payments to remain intact and remove any leverage from One Beacon Insurance, and believing that Defendant McElheney as Plaintiff's attorney knew and intended to help Plaintiff accomplish his objectives, and particularly in reliance on Defendant McElheny telling Plaintiff that Plaintiff would still be able to keep Plaintiff's disability and medical benefits under the One Beacon Insurance policy and that Plaintiff could continue to speak with One Beacon Insurance's people about payments under the policy by signing the release, Plaintiff signed the release recommended by Defendant McElheny. A copy of this release is attached hereto as Exhibit 1 and incorporated by reference.

24. Plaintiff believed everything with the release was as Defendant McElheny had explained, and this was reinforced as Plaintiff continued to receive disability benefit checks for 2-3 weeks after Plaintiff signed the form.

25. It was only after Plaintiff did not receive his weekly benefit check and thought it was "late", that Plaintiff called One Beacon Insurance to inquire, and learned Plaintiff's benefits,

5

Case 1:19-cv-00053   Document 1   Filed 06/20/19   Page 5 of 11 PageID #: 5

in their entirety, had been terminated because of the release recommended and approved by Defendant McElheny.

26. Plaintiff would never have signed the release attached as Exhibit 1 if Defendant McElheny had explained to Plaintiff that Plaintiff would be giving up all future disability and medical benefits under the One Beacon Insurance policy, particularly since Plaintiff's future benefits as Plaintiff understood them were substantially more than $8622 paid to One Beacon Insurance to resolve any subrogation claim or even the small amount Plaintiff received from the settlement after all the deductions, and Plaintiff still needed additional surgeries and other medical treatments which would have been covered by the One Beacon Insurance policy.

27. Defendant McElheny never told Plaintiff that by signing the release attached as Exhibit 1 that Plaintiff would be giving up more money under the One Beacon Insurance policy than Plaintiff would ever receive on a personal injury settlement and specifically never told Plaintiff that Plaintiff would be releasing and waiving any and all future claims under the One Beacon Insurance policy.

28. After Plaintiff's benefits stopped, Defendant McElheny represented to Plaintiff that what One Beacon Insurance did was not right and said that Defendant McElheny would file a lawsuit in Tennessee against One Beacon Insurance based on fraud and breach of contract.

29. Defendant McElheny actually drew up the lawsuit papers and sent them to Plaintiff for a lawsuit against One Beacon Insurance, but they were never filed. A copy of this draft lawsuit supplied by Defendant McElheny to Plaintiff in Tennessee is attached hereto as Exhibit 2.

30. After reading the document attached as Exhibit 2, Plaintiff became concerned about how One Beacon Insurance could be guilty of fraud since Plaintiff had an attorney who had supposedly read and approved this release with full knowledge of Plaintiff's expectations.

31. Plaintiff learned from Defendant McElheny that the only reason Plaintiff's One Beacon Insurance disability and medical benefits were stopped was because of the release which Defendant McElheny sent to Plaintiff to sign and which Defendant McElheny approved.

## **CLAIM 1—LEGAL MALPRACTICE OF DEFENDANT MCELHENY**

32. The allegations of Paragraph 1-31 are incorporated herein by reference.

33. Plaintiff alleges that as Plaintiff's attorney, Defendant McElheny had a duty to:

a. Exercise reasonable care and take action that would protect Plaintiff and his rights under the One Beacon Insurance policy.

b. Exercise reasonable care to properly review and communicate the terms and conditions of the release attached as Exhibit 1 and its effect on Plaintiff and his rights to pursue disability and medical benefits under the One Beacon Insurance Policy.

c. Exercise reasonable care to avoid action to try and hide things from Plaintiff, including Defendant McElheny's mistakes and by trying to cover up such mistakes by drafting an ineffective lawsuit against One Beacon Insurance to hide things from Plaintiff and/or misdirect Plaintiff's attention from Defendant McElheny's wrongful conduct.

34. Additionally and/or alternatively, Defendant McElheny, acting in the course of his profession as a lawyer, and in a transaction in which he had a pecuniary interest, supplied faulty information to Plaintiff meant to guide Plaintiff in his decisions related to the release attached as Exhibit 1, and Defendant McElheny failed to exercise reasonable care in obtaining or communicating information about the release as stated above; and Plaintiff justifiably relied upon the information provided by Defendant McElheny, resulting in damages to the Plaintiff.

35. Plaintiff alleges that the Defendant McElheny committed the acts or omissions outlined above; that such acts and omissions are breaches of the standards of care as outlined above;

7

and constitute negligence.

36. Defendant McElheny's failure to comply with the standards of care outlined above was the proximate cause, legal cause and cause in fact of damages to Plaintiff, for which Defendant McElheny is liable.

37. Plaintiff alleges that Defendant McElheny's conduct constitutes a gross deviation of the standard of care and was done with awareness of, but conscious disregard for, the substantial and unjustifiable risk of damage to Plaintiff, and this conduct constitutes not only gross negligence, but also recklessness, for which Defendant McElheny is liable to Plaintiff in damages.

38. Plaintiff alleges that the acts and omissions of the Defendant McElheny constitute negligence, gross negligence, and/or recklessness, which proximately caused damages to Plaintiff for which Defendant McElheny is liable including compensatory, incidental, and consequential damages, as well as punitive damages.

## **COUNT III-THE DEFENDANT LAW FIRM'S VICARIOUS LIABILITY**

39. The allegations of Paragraphs 1-38 are incorporated herein by reference.

40. Plaintiff alleges additionally and/or in the alternative the following:

a. The Defendant Law Firm, through the acts and omissions of its employees and agents, including but not limited to Defendant McElheny, failed to take adequate steps to protect Plaintiff's interests under available law, which conduct constitutes a breach of the standard of care by the Defendant Law Firm and proximately caused damages to Plaintiff.

b. The Defendant Law Firm, through the acts and omissions of its employees and agents, including but not limited to Defendant McElheny, violated the standard of attorney care for the attorney-client relationship between Plaintiff and the Defendant Law Firm and proximately caused damages to Plaintiff.

c. The Defendant Law Firm, through the acts and omissions of its employees and/or agents, including but not limited to Defendant McElheny, made material misrepresentations of material fact as stated above upon which Plaintiff reasonably relied and proximately caused damages to Plaintiff.

d. Plaintiff maintains that the acts and omissions of the Defendant Law Firm through the acts and omissions of its employees and agents, including but not limited to Defendant McElheny, as alleged above constitutes negligence and gross negligence and resulted in damages to Plaintiff.

e. To the extent that any of the acts or omissions alleged above to have been committed by Defendant McElheny were actually committed by any member, partner, officer, associate, attorney, employee, or agent of Defendant Law Firm, Defendant Law Firm is liable under principles of agency and *respondeat superior* for the acts and/or omissions of said member, partners, officer, attorney, associate, employee, or agent.

f. Additionally, and/or alternatively, based upon the facts alleged above, the Defendant Law Firm is liable under principles of agency and *respondeat superior* for the acts and/or omissions of Defendant McElheny as a member, partner, officer, attorney, associate, employee or agent of the Defendant Law Firm.

### **COUNT IV-COMPENSATORY DAMAGES RE: DEFENDANT McELHENY**

41. The allegations of Paragraphs 1 through 40 are incorporated herein by reference.

42. Because of the acts and omissions of Defendant McElheny and/or the Defendant Law Firm alleged above, Plaintiff seeks all damages permitted by law which were proximately caused, legally caused and the cause in fact of the Defendant McElheny's and/or the Defendant Law Firm's acts and omissions, including but not limited to the lost disability benefits and medical

benefits available under the One Beacon Insurance Policy, disgorging their fees and pre-judgment interest.

## COUNT V-PUNITIVE DAMAGES

43. The allegations of Paragraphs 1 through 42 are incorporated herein by reference.

44. Plaintiff alleges that the actions and omissions of Defendant McElheny as alleged above were such as to constitute reckless conduct which qualifies for punitive damages under applicable law, and Plaintiff seeks all punitive damages permitted by law.

45. Additionally, and/or alternatively, Plaintiff alleges that Defendant McElheny's efforts to conceal his wrongdoing and/or misrepresentations as specifically alleged above related the recommendations to sign the release, the effects of Plaintiff's signing the release and/or to recommending pursuing the ineffective post-release lawsuit against One Beacon Insurance to misdirect and/or conceal Defendant McElheny's acts and omissions were done intentionally, fraudulently and or recklessly such as to give rise to a claim for punitive damages pursuant to *Metcalf v. Pruitt*, 970 S.W.2d 448 (Tenn. 1988)

46. Plaintiff reserves the right to amend his pleadings to include other wrongful acts and omissions of the Defendants as Defendants provide additional documents and information file and as they are discovered and disclosed through additional pre-trial discovery.

## DEMAND FOR RELIEF

Wherefore, premises considered, the Plaintiffs demands the following relief:

1. That summonses be issued and served upon the Defendants requiring them to answer as provided by law.

2. That a jury be empaneled to consider all issues in this case.

3. That Plaintiff be awarded compensatory damages against Defendants, jointly and severally, in an amount that is just not to exceed **SEVEN HUNDRED FIFTY THOUSAND AND N0/100 ($750,000.00).**

4. That Plaintiff be awarded punitive damages against Defendant McElheny in an amount that is just, not to exceed **SEVEN HUNDRED FIFTY THOUSAND AND N0/100 ($750,000.00)**, and to the extent allowed by law, that the Defendant Law Firm also be liable for said punitive damages.

5. For general relief as the case merit.

This 20th day of June, 2019.

Respectfully Submitted,

LAW OFFICE OF EDWARD M. GRAVES, JR.

By: /s/Edward M. Graves, Jr.
EDWARD M. GRAVES, JR. #05882
502 S. Gay Street, Suite 412
Knoxville, TN 37902
(865) 544-1974
Email: senored@aol.com

LAW OFFICE OF DAVID DAY, P.C.

By: /s/David Day
David Day #010941
Attorney for Plaintiff
19 South Jefferson Avenue
Cookeville, TN 38501
(931) 528-7002
david@daviddaypc.com